IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS D. GEOGHEGAN, III                    :

                                            :

    v.                                      :    Civil Action No. DKC 10-1137

                                            :

MARTHA SHEILA GRANT                         :

                                            :

**MEMORANDUM OPINION**

Presently pending and ready for review are the motion of Defendant Martha Grant ("Ms. Grant") for partial summary judgment (ECF No. 5), the cross-motion of Plaintiff Thomas Geoghegan ("Mr. Geoghegan") for judgment on the pleadings (ECF No. 15), and the motion of Mr. Geoghegan to strike Ms. Grant's affirmative defenses and to dismiss count II of Ms. Grant's counterclaims. (ECF No. 13). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Ms. Grant's motion for partial summary judgment and/or judgment on the pleadings will be granted in part and denied in part, Mr. Geoghegan's cross-motion for judgment on the pleadings will be granted in part and denied in part, and Mr. Geoghegan's motion to strike Ms. Grant's affirmative defenses and counterclaim II will be denied as moot.

## I.  Background

The undisputed facts are as follows.  Thomas D. Geoghegan, III, is a resident of Montgomery County, Maryland.  (ECF No. 4 ¶ 5).  Martha Sheila Grant is a resident of Charleston, South Carolina and Mr. Geoghegan's sister.  (*Id.* ¶ 6; ECF No. 6-1, at 1).  In her last will and testament, the parties' mother, Martha Geoghegan, left two pieces of property to Mr. Geoghegan and Ms. Grant.  Each was given a 50%, undivided, fee-simple interest in improved property located at 3405 Rolling Court, Chevy Chase, Maryland 20815 ("Rolling Court").  In addition Mr. Geoghegan was granted a 65% interest and Ms. Grant a 35% interest, both undivided and fee-simple, in approximately 16.4 acres of partially improved real property located at 416 Rudasill Mill Road, Woodville (Sperryville), Virginia 22749 ("Circle 4 Farm").  (ECF No. 4 ¶¶ 12-13).  They owned both properties as tenants in common.

Disputes arose between Mr. Geoghegan and Ms. Grant regarding their interests in the properties, and in October 2008 Ms. Grant filed a case in the Circuit Court for Montgomery County for sale in lieu of partition of the Rolling Court property.  (*Id.* ¶ 14).  On October 9, 2009, the parties entered into a written Settlement Agreement of all actual or potential claims from the Montgomery County court action.  (*Id.* ¶ 16; ECF No. 6-2, Settlement Agreement).  Per the terms of the

Settlement Agreement, the Rolling Court property was to be sold and any net proceeds from the sale were to be given to Ms. Grant. In return, Ms. Grant was to convey her 35% interest in Circle 4 Farm to Mr. Geoghegan via a "general warranty deed . . . free and clear of any liens or encumbrances." Specifically, section 5(g) of the Settlement Agreement states:

> At the Rolling Court Settlement, and in consideration of the Circle 4 Credit being paid to Grant at that time, Grant and Geoghegan shall co-sign a general warranty deed conveying to Geoghegan each of their undivided, fee-simple interest in the Circle 4 Farm, free and clear of any liens or encumbrances. The cost of preparation and recordation of such deed shall be borne solely by Geoghegan.

In section 8 of the Settlement Agreement ("Warranties and Representations") the parties made several other representations regarding the properties, including in subsection 8(d) that:

> there are . . . no judgments, orders, or decrees entered against any of them in any court that have not been fully satisfied or that otherwise affect or might affect their respective titles to Rolling Court or the Circle 4 Farm; no unrecorded liens, encumbrances, mortgages, licenses, or easements against either of their respective interests in Rolling Court of the Circle 4 Farm; and no unrecorded deeds or powers that affect or might affect either of their respective titles to Rolling Court or the Circle 4 Farm.

In subsection 8(e) the parties represented that

> to the best of her or his knowledge, information and belief, formed after a

> reasonable inquiry, there are no legal
> obligations . . . that would deprive either
> of them of the immediate right to possession
> of their respective interests in Rolling
> Court or the Circle 4 Farm.

(*Id.* § 8(e)). Additionally, in subsection 8(k) the parties warranted that they had:

> neither assigned, pledged, encumbered, or
> leased nor agreed to assign, pledge,
> encumber, or lease:
> (i) any claim, demand, sum of money,
> interest, action, right, cause of action,
> obligation, indebtedness, or liability of
> any kind or nature whatsoever that she/he
> may have against any other Party arising out
> of or relating to her or his respective
> ownership interests in Rolling Court or the
> Circle 4 Farm . . .;
> (ii) any of their respective ownership
> interests in Rolling Court and the Circle 4
> Farm.

The Settlement Agreement also contains an integration clause and a choice of law provision stating that the agreement should be construed and enforced in accordance with Maryland law. (Settlement Agreement at §§ 11-12).

On April 1, 2010, the parties signed a contract to sell Rolling Court for $820,000 and closing was scheduled for April 28, 2010. (ECF No. 6-9 ¶ 9). In preparation for the closing, counsel for Mr. Geoghegan prepared two general warranty deeds each with the "full English covenants of title," a term that is

expressly construed by Virginia statute.[1]  Counsel for Ms. Grant
showed the deeds to a Virginia attorney who determined that full
English covenants of title were not required by the terms of the
Settlement Agreement and prepared new versions of the deeds
without these covenants.[2]  Ms. Grant executed the revised deeds
and tendered them to Mr. Geoghegan on April 27, 2010.  Mr.
Geoghegan refused to sign the deeds and through his counsel
informed Ms. Grant that he would be withholding the funds that
Ms. Grant was due in the Settlement Agreement until a deed with
the full English covenants of title was executed.

On May 6, 2010, Mr. Geoghegan filed a complaint in federal
court seeking a declaratory judgment (count I) and specific
performance of the Settlement Agreement such that Ms. Grant must
tender a signed, acknowledged copy of Mr. Geoghegan's version of
the deed or a similar deed containing both a general warranty of

---

[1] The deed granted and conveyed the property "in fee simple,
unto the GRANTEE with General Warranty of Title and Full English
Covenants of title" and later recited that "The Grantor (i)
warrants general title to the property hereby conveyed, (ii)
covenants that GRANTOR has the right to convey the aforesaid
property unto the GRANTEE, (iii) covenants that GRANTOR will
execute such further assurances of the land and premises as may
be requisite and (iv) covenants that the GRANTEE shall quietly
enjoy the property."

[2] The deed recited that it was a "General Warranty Deed" and
recited that the grant was "in fee simple, unto the GRANTEE with
General Warranty of Title."  The deed also contained the
following: "The GRANTOR (i) warrants general title to the
property hereby conveyed."

title and full English covenants of title (count II).
(ECF No. 4 ¶¶ 45-60). Ms. Grant answered the complaint and
asserted counterclaims for breach of contract (count I) and
declaratory relief (count II). (ECF No. 5 ¶¶ 17-25). Ms. Grant
then filed a motion for partial summary judgment on the two
counts of Mr. Geoghegan's complaint and seeking an affirmative
declaration that Mr. Geoghegan be required to execute the
General Warranty Deed and tender the sum due to Ms. Grant, and
Mr. Geoghegan filed a cross-motion for judgment on the pleadings
on both counts of his amended complaint and count I of Ms.
Grant's counterclaims and seeking a declaration that Ms. Grant
is required to convey the property by deed containing both a
general warranty and full English covenants of title and
ordering specific performance. (ECF Nos. 6 and 15). Both
parties seek attorneys' fees. Mr. Geoghegan also filed a motion
to strike Ms. Grant's affirmative defenses and counterclaim II.
(ECF No. 13). While these motions were pending, Ms. Grant's
motion for leave to file an amended answer and counterclaims was
granted. (ECF Nos. 17 and 22).[3]

---

[3] The amendment moots the motion to strike, which will,
thus, be denied.

## II. Motions for Summary Judgment or Judgment on the Pleadings

### A. Standard of Review

The parties dispute whether the court should consider the pending motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56 or motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). As it turns out, this dispute is largely academic. As noted in 5C Wright & Miller, *Federal Practice & Procedure* § 1369 (3d. ed. 2010):

> Federal Rule 12(c) should be read in conjunction with several other federal rules authorizing pretrial motions, especially the various Rule 12(b) motions to dismiss, the Rule 12(f) motion to strike, and the Rule 56 motion for summary judgment. Collectively, these procedures provide an arsenal of weapons for challenging the sufficiency of an opponent's pleading and the viability of the underlying claim or defense. Although under modern practice these various techniques have to some extent become interchangeable, distinctions still remain as to their respective scope and effect. The question of which device should be employed in a particular context usually will be answered on the basis of the challenge being made, the identity of the party interposing it, and the nature of the alleged defect.

Fed.R.Civ.P. 12(c) provides: "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." The standard for resolving a motion pursuant to Rule 12(c) depends on the nature of the relief being sought. For example, Rule 12(h) permits a defense of failure to

state a claim to be raised by a motion under Rule 12(c), so that the standard is the same as for 12(b)(6) motions and a court will only consider the pleadings. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). In other situations, the standard for a Rule 12(c) motion on the pleadings is identical to the standard for summary judgment motions. 5C Wright & Miller, *Federal Practice & Procedure* § 1369("Both the summary judgment procedure and the motion for judgment on the pleadings are concerned with the substance of the parties' claims and defenses and are directed towards a final judgment on the merits."). The later rubric is more appropriate where the moving party seeks affirmative relief on the basis of the pleadings and not merely a dismissal of claims brought against it.

The key distinction between a Rule 12(c) motion and a Rule 56 motion is that the court may not consider facts outside the pleadings under Rule 12(c). Motions on the pleadings can be used to obtain declaratory judgments where the parties' only dispute is the proper interpretation of contractual terms. *See, e.g., Hous. Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596 (7th Cir. 2004)(upholding decision of trial court to grant plaintiff's motion for judgment on pleadings where plaintiff sought a declaratory judgment that under the parties' insurance contract plaintiff had no duty to defend the

defendants in a lawsuit.); *A.S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190 (4th Cir. 1964)(affirming judgment on pleadings for Plaintiff in its action to enforce collective bargaining agreement's arbitration provision).

Ms. Grant captioned her motion as one for summary judgment so that the court would consider the affidavit prepared by Ira S. Saul, Esq., a real estate lawyer licensed in Virginia. (ECF No. 6-1). Mr. Geoghegan argues, however, that Mr. Saul's affidavit is inadmissible and should not be considered. (ECF No. 15-2, at 8-10). Ms. Grant concedes that if Mr. Saul's affidavit is excluded, the court should evaluate the motions pursuant to Rule 12(c). (ECF No. 19-1, at 21)

Mr. Geoghegan objects to consideration of Mr. Saul's affidavit and argues that it is inadmissible pursuant to Fed.R.Civ.P. 56(e)(1) and Fed.R.Evid. 602 because Mr. Saul is not competent to testify regarding the matters contained in the affidavit and he lacks personal knowledge of them. (ECF No. 15-2, at 8). Mr. Geoghegan argues that Mr. Saul's affidavit includes statements of the kind only an expert witness can provide and Mr. Saul has not been properly qualified as an expert in real estate law or deed preparation in Virginia (*Id.* at 9). Moreover, Mr. Geoghegan argues that experts generally

are not permitted to testify regarding purely legal issues or the meaning of contract terms. (*Id.*)

Ms. Grant counters that Mr. Saul has personal knowledge of the issues discussed in his affidavit because he assisted in the preparation of the deeds for Ms. Grant. Ms. Grant also argues that the affidavit does not contain legal conclusions but instead "provides a straightforward reading of the Settlement Agreement and an explanation of how a Virginia attorney would construct a deed pursuant to the terms set forth in the Settlement Agreement." (ECF No. 19-1, at 19-20). Ms. Grant also suggests that the court need not strike the entire affidavit if only portions of it are deemed inadmissible. (*Id.* at 21).

Expert testimony regarding pure questions of law is generally inadmissible. *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)(stating that expert testimony on ultimate issues that merely states a legal conclusion is generally inadmissible because it will not aid a jury); *United States v. Chapman*, 209 F.App'x. 253 (4th Cir. 2006), *cert. denied*, 550 U.S. 949 (2007). In *Chapman*, the Fourth Circuit upheld the district court's ruling that an expert could not testify regarding the nature of fiduciary duties that were outlined in a contract and whether those duties had been violated. The court explained that such testimony would usurp the district court's obligation

to explain the governing law and would be confusing to the jury. (*Id.* at 269).

Mr. Saul's affidavit consists primarily of information that is inadmissible or duplicative of information already in the record. Mr. Saul does little more than recite the terms of the Settlement Agreement, provisions of the Virginia code, and his interpretations of the two. (ECF No. 6-8). For example, Mr. Saul avers that the deeds he prepared "conform to the terms set forth in the Settlement Agreement" (*id.* ¶ 11) and that a deed which includes full English covenants would be "an expansion of rights for which the parties did not contract." (*Id.* ¶ 20). An affidavit from a practicing lawyer is not the proper vehicle for Ms. Grant to introduce her legal arguments, and she cannot use an affidavit to disguise legal arguments as facts. To the extent the affidavit contains facts regarding Mr. Saul's relationship with the Ms. Grant and his role in drafting the deeds, those portions may be admissible, but they are not material to the disputed legal issue. For these reasons, the affidavit is irrelevant to a resolution of the motions' merits.

Because the court will not consider Mr. Saul's affidavit, the standard is the same whether construed as a motion for judgment on the pleadings or a motion for summary judgment, namely whether there are any genuine disputes of material fact so that the case can be decided as a matter of law.

**B.   Analysis**

**1.   Declaratory Judgment**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (2006).  The Fourth Circuit has held:

> it is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Equip. N. Am. v. CLM Equip. Co.*, Inc., 386 F.3d 581, 592 (4th Cir. 2004)(citing 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).  Here, all three elements are satisfied.

Both parties agree that the Settlement Agreement is valid and enforceable and that the court can interpret the terms of the Settlement Agreement and the parties' obligations therein at this time without the need for any discovery.  (ECF No. 6-1, at 4; ECF No. 20, at 2).  Their agreement ends there, however.

Ms. Grant argues that by the clear terms of section 5(g) of the contract, she agreed to convey only a general warranty deed. Ms. Grant maintains that the agreement does not reference explicitly or otherwise the full English covenants of title and that to the extent any covenants beyond those of a general warranty deed were referenced in section 8 of the agreement, any warranties or representations in that section expired at time of the Rolling Court settlement. Ms. Grant further argues that, because the settlement is an unambiguous fully integrated document, extrinsic evidence, including references to the parties' intent at the time the Settlement Agreement was created, may not be considered by the court. (ECF No. 6-1, at 4-7).

Mr. Geoghegan, in contrast, argues that the terms of the Settlement Agreement obligated Ms. Grant to convey her interest in the Circle 4 Farm in a deed containing a general warranty of title and the full English covenants of title. Mr. Geoghegan contends that considering the contract in its entirety makes clear that the full English covenants must be included in the deed and he additionally argues that an agreement to convey fee-simple title by a general warranty deed implies that the deed will contain the full covenants of title. (ECF No. 15-2, 11-18).

Under Maryland's objective theory of contract interpretation unambiguous contract terms are given their plain meaning, regardless of the parties' intentions at the time the contract was formed. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). The interpretation of a written contract is ordinarily a question of law for the court. *Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306 (1991). Therefore, when interpreting a contract, the court's task is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Calomiris v. Woods*, 353 Md. 425, 436 (1999)(quoting *Gen. Motors Acceptance v. Daniels*, 303 Md. 254, 261 (1985). "The true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* In its interpretation, the court must look to the entire language of the agreement, not merely a portion thereof, *Jones v. Hubbard*, 356 Md. 513, 534-35 (1999), but parol evidence of the parties' intent or meaning should not be considered unless there is an ambiguity. *Beale v. Am. Nat'l. Lawyers Ins. Reciprocal,* 379 Md. 643, 660 (2004); *Bushey v. N. Assurance,* 362 Md. 626, 632 (2001); *see also Higgins v. Barnes,* 310 Md. 532, 537 (1987)*(*"evidence is inadmissible to vary,

alter, or contradict a contract that is complete and unambiguous.").

The parties agree that, although the Settlement Agreement is to be construed according to Maryland law, Virginia law governs the deed language issue. Their contract, however, requires that Maryland law apply, even if Maryland might otherwise apply the law of Virginia. Indeed the Agreement states in section 12: "This Settlement Agreement shall be construed and enforced in accordance with the laws of Maryland, notwithstanding the choice of law rules thereof." (ECF No. 6-2 § 12). Thus, Maryland law must be examined to determine the meaning of the words in the contract.[4]

As will be explained, the Settlement Agreement contemplated the execution of general warranty deeds with assurances that there were no "liens or encumbrances." Those words in effect encompass some, but not all, of the specific provisions found

_____

[4] As it turns out, Virginia law is identical in its recitation of a general warranty of title. *See* Va. Code Ann. § 55.68. Also, under Virginia law, the term "English Covenants of Title" are those covenants set out in Va. Code Ann. §§ 55-71 through 55-74 and the covenant that the grantee is seized in fee simple of the property conveyed. Va. Code §§ 55-71 through 74 expressly define the covenants of the right to convey, for quiet possession and free from encumbrance, for further assurances, and of no act to encumber. Maryland law does not define or refer to the term "English covenants of title", although it does define the individual covenants in Md. Code Ann., Real Property, §§ 2-108, 2-109, 2-112.

later in the agreement.  And, while nearly all of the "English covenants of title" are included in the later sections, section 5 (g) does not require the remaining provisions to be included in the deeds.  Thus neither party is entirely correct in its view of the correct wording for the deeds.

In *Erlewine v. Happ*, 39 Md.App. 106, 108 (1978), the Court of Special Appeals explained that:

> A warranty in a deed is a covenant by the grantor to warrant and defend the title and possession of the grantee.  A general warranty is a covenant to defend against all lawful claims, whatsoever.  A special warranty, in contrast, is a covenant only to warrant and defend against the claims of the grantor and all persons claiming or to claim by, through, or under him. Tiffany, Real Property, § 578 (3rd ed. 1970).

> By statute, the Maryland Legislature has provided that, "(a)covenant by the grantor in a deed, 'that he will warrant generally the property hereby granted,' has the same effect as if the grantor had covenanted that he will warrant forever the property to the grantee against every lawful claim and demand of any person." Md.Ann.Code, Art. Real Property, § 2-105 (1974 & Cum.Supp.1977).

The Settlement Agreement also required the deed to convey the property "free of liens or encumbrances."  Md. Code Ann., Real Prop. § 2-111, contains a rule of construction:

> § 2-111.  Covenant against encumbrances; operation

> A covenant by the grantor in a deed, "that the land is free and clear of all

encumbrances" has the same effect as if he had covenanted that neither he nor his predecessors in his chain of title had done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be granted, or any part of it, are or will be charged, affected, or encumbered in title, estate, or otherwise.

The Court of Appeals of Maryland has explained:

There is no precise definition of an encumbrance:

"An encumbrance is any right or interest held by someone other than the grantee or grantor which diminishes the value of the estate but not so much that it leaves the grantee with no title at all. The word [encumbrance] has no precise meaning but includes security instruments, leases, mechanics' liens, property tax assessment liens, easements, future interests and covenants running with the land at the time of conveyance, other than those specifically set forth in the deed."

*Magraw v. Dillow*, 342 Md. 492, (1996)(quoting 11 T*hompson on Real Property, Thomas Edition* § 94.07(b)(1)(ii)(3)(David A. Thomas ed. 1994 & Supp. 1995)(footnote omitted). *Magraw* also identified six factors to help determine whether a cloud on title constitutes an encumbrance: (1) a right or interest in land; (2) subsisting in a third party; (3) diminishing the value of the property purchased; (4) but not so much that the grantee received no title at all; (5) but must have preexisted the contract of sale and be breached, if at all, at the time of conveyance; and (6) the subject property must be in the hands of the covenantee and not a remote purchaser. *Id.* at 493.

Liens are a type of encumbrance.  *See Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 416 (1971)("liens, including tax liens, mortgage liens, attachment liens and judgment liens, breach the covenant [against encumbrances] unless excepted from its operation either expressly or by implication.").  Thus, while it is common for deeds and contracts for sale to reference both liens and encumbrances, as the Settlement Agreement does, a covenant against encumbrances by definition includes the guarantee against liens.

The general warranty combined with a covenant against encumbrances is broad enough in scope to encompass the warranties and representations the parties made in sections 8(d), 8(e), and 8(k) of the Settlement Agreement.  Section 8(d)(i) includes the representation that "there are no outstanding writs of execution, attachment, or garnishment pending against either of them in any court."  Writs of execution, attachment, and garnishment, if properly executed, are forms of encumbrances on property.[5]  Section 8(d)(ii)

---

[5]  Writs of execution and writs of garnishment are subcategories of writs of attachment.  A writ of execution is issued by the court and directs the sheriff to levy upon property of a judgment debtor to satisfy a money judgment.  *See* Md. Rules, Rule 2-641(a); *R&D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008)("An attachment is implemented by a writ of execution that is levied by the sheriff against specific property of a judgment debtor.")  Writs of garnishment permit the attachment

includes the representation that there are "no judgments, orders, or decrees entered against either of them in any court that have not been fully satisfied or that otherwise affect or might affect . . . title to . . . Circle 4 Farm." The only way in which any such judgments, orders, etc. could affect title is via a writ of attachment, execution, or garnish, or with a judgment lien—all of which fall beneath the umbrella of encumbrances. Likewise, the representation in section 8(d)(iii) that there are "no unrecorded liens, encumbrances, mortgages, licenses, or easements against . . . their respective interests in . . . Circle 4 Farm," is just a restatement of protections included in the covenant against encumbrances.

The representations made in subsections 8(d)(iv), 8(e), and 8(k) are covered by the general warranty. In subsection 8(e) the parties represent that there are "no unrecorded deeds or powers that affect or might affect . . . title to . . . Circle 4 Farm." Because the general warranty is one "to warrant and defend the title and possession of the grantee," Tiffany, Real Property, § 578 (3rd ed. 1970), it encompasses unrecorded deeds or other challenges to title. Subsection 8(e) includes the

---

of the property of a judgment debtor in the possession of third parties. Md. Rules, Rule 2-645; *R&D 2001, LLC*, 402 Md. at 664 ("A garnishment is used to attach property of the judgment debtor that is in the possession of a third party.")

representation that there are no "legal obligations . . . that would deprive either of them of the immediate right to possession of their respective interests in . . . Circle 4 Farm." This representation is also covered by the scope of a general warranty. Finally subsection 8(k)(ii) includes the representation that the parties have not "assigned, pledged, encumbered, or leased, or agreed to assign, pledge, encumber or lease . . . any of their respective ownership interests . . . in Circle 4 Farm." Yet again any act that would contradict this representation would also be a breach of either the general warranty or the covenant against encumbrances.

Mr. Geoghegan argues that Ms. Grant was required to include additional warranties and representations based on the terms of Section 8 of the Agreement, namely the covenants of the right to convey, further assurances, and quiet enjoyment. (ECF No. 15-2, at 15). These covenants, or variations thereof, are expressly defined in the Maryland code[6], but the provisions of Section 8 of

---

[6] The Maryland code contains rules of construction for the covenants of the "right to grant," "quiet enjoyment," and further assurances. Md. Code Ann., Real Property, §§ 2-108, 2-109, 2-112. These sections state as follows:

§ 2-108 Operation of right to grant

A covenant by the grantor in a deed "that he has the right to grant the land" has the same effect as if the grantor had covenanted

the Settlement Agreement do not track the statutory provisions
for these covenants. If the parties had intended for these
covenants to be included in the Circle 4 Farm, the Settlement
Agreement would have expressly referenced or used the language

---

that he has good right, full power, and
absolute authority to grant the land to the
grantee in the deed, in the manner in which
the land is granted, or intended to be, by
the deed, according to its true intent.

§ 2-109. Operation of quiet enjoyment
covenant

A covenant by the grantor in a deed that the
grantee "shall quietly enjoy the land" has
the same effect as if he had covenanted that
the grantee at any time thereafter might
peaceably and quietly enter on, and have,
hold, and enjoy the land granted by the
deed, or intended to be granted, with all
the rights, privileges, and appurtenances
belonging to it, and to receive the rents
and profits for his use and benefit, without
any eviction, interruption, suit, claim, or
demand by the grantor and free from any
claim or demand by any other person.

§ 2-112. Covenant for further assurances;
operation

A covenant by a grantor in a deed "that he
will execute further assurances of the land
as may be requisite" has the same effect as
if the grantor had covenanted that he at any
time on any reasonable request, at the
expense of the grantee, will do any further
act and execute any further instrument to
perfect the grant and assure to the grantee
the lands granted, or intended to be
granted, as shall be reasonably required by
the grantee or his attorney.

similar to that found in the Maryland code. Moreover, the covenants of future assurances and quiet enjoyment are future covenants that may be breached by events subsequent to the delivery of the deed and not only at the time of conveyance. *Magraw*, 341 Md. at n.10. The Settlement Agreement is explicit in section 8, however, that the warranties and representations included therein were only in effect until the date of the Rolling Court settlement (the date on which the deed conveying Circle 4 Farm would be executed). This is a clear indication that the parties did not intend to include future covenants in the deed and an additional reason that Mr. Geoghegan's interpretation cannot prevail.

In short, the Settlement Agreement required the parties to co-sign a deed for Circle 4 Farm that provided a general warranty of title in fee-simple, free and clear of any liens or encumbrances. This means that the deed must contain the words: "The Grantor (i) warrants general title to the property hereby conveyed, and (ii) covenants that the land is free and clear of all liens and encumbrances."

### 2. Breach of Contract/Specific Performance

Mr. Geoghegan asserts that Ms. Grant breached the agreement by failing to convey the Circle 4 Farm with the deed prepared by Mr. Geoghegan, and Mr. Geoghegan seeks specific performance of the agreement according to his interpretation of its terms.

(ECF No. 15). Ms. Grant asserts that Mr. Geoghegan refused to execute the deed, prepared in accordance with the terms of the Settlement Agreement, and denied Ms. Grant the $385,054.59 she was due from the closings. Ms. Grant seeks an order requiring Mr. Geoghegan to execute the general warranty deed prepared by her counsel and to tender $385,054.49 plus pre and post judgment interest. (ECF No. 6).

To succeed in a claim for breach of contract under Maryland law, a party must prove that the other party owed a contractual obligation and that the other party breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). In certain cases specific performance may be the proper remedy for a breach of contract. To qualify for specific performance, a party must prove the existence of an agreement between the parties and a breach of that agreement by the other party. *See Data Consultants, Inc. v. Traywick,* 593 F.Supp. 447, 453 (D.Md. 1983)(citing *Offutt v. Offutt,* 106 Md. 236 (1907)), *aff'd by,* 742 F.2d 1448 (1984)(unpublished disposition); *see also Namleb Corp. v. Garrett,* 149 Md.App. 163, 174 (2002)("Specific performance may be granted in an appropriate case on the basis of the strength of the circumstances and equities of each party.")(citing *Zouck v. Zouck,* 204 Md. 285, 296 (1954)), *cert. denied,* 374 Md. 83 (2003). Although specific performance is generally considered an extraordinary equitable remedy, it "has

been particularly recognized as appropriate where the contract is for the sale of land because of the presumed uniqueness of land itself, no parcel being exactly like another." *Cattail Assocs., Inc. v. Sass*, 170 Md.App. 474, 500-501 (2006)(quoting *Archway Motors, Inc. v. Herman*, 37 Md.App. 674, 681 (1977)).

The outcome of the breach of contract claims follows from the court's interpretation of the Settlement Agreement. Both parties failed to comply with the terms of the Settlement Agreement. Mr. Geoghegan was to bear the cost of preparation of the deed, but the Settlement Agreement does not recite which party is responsible for preparation of the deed. The deeds prepared by both parties failed to meet the requirements set forth in the Settlement Agreement and Mr. Geoghegan failed to pay Ms. Grant her portion of the proceeds from the sale of Rolling Court. The question then is whether either party can recover from the other's failure to perform.

It is generally accepted that under ordinary circumstances a party seeking to recover for breach of contract must have performed its part of that contract. *Fishman Const. Co. v. Hansen*, 238 Md. 418 (1965); 23 Williston on Contracts § 63.3 (4th ed. 2010); *see also Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 260-61 (4th Cir. 1981)("A party suing on the contract must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the

opposing party.)(citing *Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 274 Md. 142 (1975); *Wischhusen v. Am. Medicinal Spirits Co.*, 163 Md. 565 (1933)); *see also Nat'l Micrographics Sys., Inc. v. OCE-Industries, Inc.*, 55 Md.App 526, 545 (Md.App. 1983)("one party may not recover from another party under a contract unless the former has performed or is ready and willing to perform."). Under both Maryland law and general contract law, courts have held that in some instances where both parties are at fault (or in default) neither may recover. *Westinghouse Elec. Corp v. Garrett Corp.*, 601 F.2d 155, 158 (4th Cir. 1979)(citing *Gen. Metals, Inc. v. Green Fuel Economizer Co.*, 213 F.Supp. 641 (D.Md. 1963); *Auto. Devices Co. v. Auto. Devices Co. of Pa.*, 292 F.2d 663 (3d Cir. 1961); *Armour & Co. v. Scott*, 360 F.Supp. 319 (W.D.Pa. 1972); 6 Williston on Contracts § 882 (3d ed. 1962)). Here, both parties' theories of recovery are flawed. Mr. Geoghegan cannot recover for Ms. Grant's failure to execute the deed he prepared because that deed included warranties and representations in excess of those agreed to by the parties in the Settlement Agreement. But Ms. Grant also failed to perform because the deed she prepared and submitted to Mr. Geoghegan for execution was likewise not in accordance with the terms of the Settlement Agreement. Thus, Mr. Geoghegan was not obligated to sign it or to pay Ms. Grant the agreed upon

portion of the closings until a proper deed was executed by both parties to transfer ownership of Circle 4 Farm.

Accordingly, neither party can recover for breach of contract.

## III. Conclusion

For the foregoing reasons, Ms. Grant's motion for partial summary judgment and/or judgment on the pleadings will be granted in part and denied in part, Mr. Geoghegan's cross-motion for judgment on the pleadings will be granted in part and denied in part, and Mr. Geoghegan' motion to strike Ms. Grant's affirmative defenses and counterclaim II will be denied as moot. A separate Order will follow.

/s/

_____
DEBORAH K. CHASANOW
United States District Judge
